Johnathan T. Greenway, Esq. (SBN 313850)
**GATOR LAW, P.C.**
2 N Central Avenue, Suite 1800
Phoenix, AZ 85004
Telephone: (385) 324-5471
Email: attorneys@gatorlawpc.com

Attorneys for Plaintiff
FLORENCE ASSALIT

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| FLORENCE ASSALIT,<br><br>Plaintiff,<br><br>v.<br><br>AIR COMMUNITIES; COLUMBIA DEBT RECOVERY, LLC DBA GENESIS,<br><br>Defendants. | Case No. 5:26-cv-05305-EKL<br><br>**PLAINTIFF FLORENCE ASSALIT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT APARTMENT INCOME REIT, L.P. D/B/A AIR COMMUNITIES' MOTION TO DISMISS (ECF NO. 20)**<br><br>Date: October 14, 2026<br>Time: 10:00 a.m.<br>Place: Courtroom 7<br>280 South 1st Street<br>San Jose, CA 95113<br><br>Judge: Hon. Eumi K. Lee |

Comes Now, Plaintiff Florence Assalit ("Plaintiff"), and for her opposition to Defendant Apartment Income REIT, L.P. d/b/a AIR Communities' ("AIR") Motion to Dismiss (ECF No. 20) ("Motion" or "Mot."), states as follows:

## I. INTRODUCTION

AIR describes this case as a landlord–tenant dispute, in which it did nothing more than keep a deposit, but the Complaint, and the collection e-mail it describes, show otherwise. Indeed AIR claimed that Plaintiff owed AIR $1,000 and then tried recover such alleged debt with a debt collector. The collector then pursued such debt under the name of AIR's apartment community as a "past due" account bearing interest at 7% a year and warned that the account would be reported to the credit bureaus. Compl. ¶¶ 14, 17–22. The foregoing describes AIR and its collector's efforts at debt collection which is subject to the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"). Unlike the federal FDCPA, the Rosenthal Act reaches creditors collecting their own debts. Cal. Civ. Code §§ 1788.2(c), 1788.17.

Each of AIR's Motion's five proffered arguments fail. The Complaint pleads facts, not labels. Rule 9(b) does not govern a strict-liability collection claim. AIR and its collector themselves treated the obligation as a consumer credit obligation. AIR's placement of the account caused the conduct that injured Plaintiff. And, every violation alleged occurred within one year before filing. Defendant's motion should be denied, or at a minimum, Plaintiff should be granted leave to amend her Complaint.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Complaint, read with the collection e-mail it incorporates, plausibly alleges that AIR engaged in debt collection under the Rosenthal Act.

2. Whether the $1,000 AIR claimed Plaintiff owed is a "consumer debt."

3. Whether Rule 9(b) applies, and whether Plaintiff adequately pleads that AIR caused her injuries.

4. Whether the claim is timely where the violations alleged occurred between December 2025 and April 2026.

5. Whether, if the Motion is granted in any part, Plaintiff should receive leave to amend.

## III. STATEMENT OF FACTS

Plaintiff paid a $1,000 deposit for an apartment owned by AIR. Compl. ¶ 14; *see* Mot. at 2

(deposit paid "in connection with an apartment managed by AIR"). AIR asserted that the deposit was a non-refundable "holding fee" and kept it. Compl. ¶ 17. Plaintiff disputed the charge with her bank, which returned the payment to her. *Id.*

AIR did not treat the matter as closed. On December 11, 2025, it placed the account for collection with Defendant Columbia Debt Recovery, LLC d/b/a Genesis ("Genesis"). Assalit Decl. Ex. A. On February 19, 2026, Genesis e-mailed Plaintiff a demand for the debt, which "arose from the security deposit." Compl. ¶¶ 18–19. The e-mail identified the "Original Creditor" as "MALIBU CANYON," the AIR community to which Plaintiff paid the deposit, and demanded a "past due" principal of $1,000.00 plus $13.42 in interest. Assalit Decl. Ex. A. It stated that the "account bears interest at 7.00% percent per annum." It also warned that a negative credit report "may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations." *Id.* Plaintiff disputed the debt because she owes neither AIR nor Genesis any money. Compl. ¶ 20. On April 10, 2026, Genesis responded that she owed $23.01 in interest on top of the $1,000 principal. Genesis also reported the debt to the credit reporting agencies, which stopped reporting it after Plaintiff disputed it. *Id.* ¶¶ 21–22. Plaintiff suffered harassment, lost access to credit, and emotional distress from Defendants' "joint debt collection activity." *Id.* ¶¶ 24–25. She filed this action on June 3, 2026. ECF No. 1.

## IV. LEGAL STANDARD

A complaint survives a Rule 12(b)(6) motion if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court accepts the factual allegations as true and construes them in the light most favorable to the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). The Court may also consider a document incorporated by reference, which includes a document to which "the plaintiff refers extensively" or which "forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). Genesis's February 19, 2026 e-mail is such a document. The Complaint pleads its substance; the claim rests on it. Compl. ¶¶ 18–19, 24; Assalit Decl. Ex. A.

The Rosenthal Act was enacted "to prohibit debt collectors from engaging in unfair or deceptive acts or practices in the collection of consumer debts." Cal. Civ. Code § 1788.1(b). It is "a remedial statute [that] should be interpreted broadly in order to effectuate its purpose." *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 340 (2009) (quoting *Butler v. Resurgence Fin., L.L.C.*, 521 F. Supp. 2d 1093, 1096 (C.D. Cal. 2007)). It requires "every debt collector collecting or attempting to collect a consumer debt" to comply with Sections 1692b through 1692j of the FDCPA, and it makes the FDCPA's remedies available for violations. Cal. Civ. Code § 1788.17; *Riggs v. Prober & Raphael*, 681 F.3d 1097, 1100 (9th Cir. 2012). To state a claim, a plaintiff must allege that (1) she is a "debtor," (2) the defendant is a "debt collector," and (3) the defendant committed an act that violates the FDCPA as incorporated. Mot. at 6 (citing *Gonzalez v. L. Off. of Allen Robert King*, 195 F. Supp. 3d 1118 (C.D. Cal. 2016)). The debt must also be a "consumer debt." Cal. Civ. Code § 1788.17.

## V. ARGUMENT

### A. The Complaint Pleads Sufficient Facts to State a Claim.

Rule 8 requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Rule 9(b)'s heightened standard is narrower. It requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake," while "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Where fraud is not an essential element of a claim, Rule 9(b) applies only to the particular averments of fraud, not to the claim as a whole. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104–05 (9th Cir. 2003).

AIR contends that Count II merely recites statutory subsections. Mot. at 5–6. But Count II incorporates specific facts, such as that AIR claimed the $1,000 deposit at issue as a debt owed by

Plaintiff by virtue of, among other things, sending the debt to a debt collector. Compl. ¶¶ 14, 17, 19. Indeed, the Complaint's paragraph 19 explains that the debt collector's correspondence explained that the debt collector was attempting to collect a debt for AIR, arising from the deposit./Defendants pursued collection of the resulting debt by e-mail, interest assessments, and credit reporting. *Id.* ¶¶ 18–22. And Defendants' "joint debt collection activity" caused Plaintiff harm (notably, the FDCPA provides for statutory damages). *Id.* ¶ 24. Plaintiff's allegations are more than sufficient to put AIR on notice of its actionable conduct and plausibly give rise to an entitlement to relief under the Rosenthal Act

Defendant AIR is also incorrect in asserting that Plaintiff's pleadings comprise improper group pleading. The Complaint identifies AIR's conduct (¶¶ 14, 17) separately from Genesis's conduct (¶¶ 18–23) and alleges that they acted jointly (¶ 24). AIR's argument here, relies on an inapplicable *Iqbal* quote, which concerns the *Bivens* liability of each "Government-official defendant" in that case, for whom respondeat superior was unavailable. 556 U.S. at 676. Nothing in *Iqbal* forbids pleading that a creditor and its collection agent acted in concert and are both liable for their conduct.

Finally, Defendant is incorrect that Rule 9(b) applies to Plaintiff's pleadings and even if it does apply, the Rule has no bearing on whether Plaintiff states a claim because Plaintiff's causes of action do not require pleading fraudulent conduct and thus, even disregarding any pleadings that rise to the level of allegations of fraud, Plaintiff's pleadings are necessarily sufficient support Plaintiff's statutory causes of action. *Vess*, addressing a statutory cause of action, to which the defendant therein claimed Rule 9(b) applied, explained that "[w]here averments of fraud are made in a claim in which fraud is not an element, an inadequate averment of fraud does not mean that no claim has been stated." *Vess*, 317 F.3d at 1105. Indeed, the relevant Rosenthal Act, like the FDCPA it incorporates, imposes liability without allegations of fraud, such as proof of intent to defraud or mislead, reliance, or damage. *See Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175–76 (9th Cir. 2006) (holding that a § 1692e violation need not be knowing or intentional).

Here, Plaintiff's Complaint pleads statutory causes of action and the facts necessary to

sustain such causes of action—any pleading which rises to the level of an allegation of fraudulent conduct is wholly unnecessary to Plaintiff's Complaint and thus cannot serve as justification to dismiss Plaintiff's pleadings. To the extent this Court believes that Plaintiff has made allegations rising to the level of fraud, Plaintiff's pleadings satisfy Rule (b)'s heightened pleading standard. Again, Plaintiff's Complaint explains that AIR has treated the $1,000 at issue as a debt, which Plaintiff owes to Air, as made plausible by AIR's engagement of a debt collector to collect such debt from Plaintiff (Plaintiff's pleadings explain that the debt collector stated they were collecting this $1,000 deposit debt). Compl. (*passim*). More specifically, Plaintiff states a plausible case that AIR misrepresented this debt's existence to the debt collector, as part of engaging such debt collector. Compl. (*passim*).

### B. <u>AIR Engaged in Debt Collection, Directly and Through Its Agent.</u>

The Rosenthal Act defines a "debt collector" as any person who, "in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). "Debt collection" means "any act or practice in connection with the collection of covered debts," which include consumer debts. *Id.* § 1788.2(b). That definition covers creditors collecting their own debts, which the FDCPA does not. Such debt collectors must comply with the FDCPA's substantive provisions. *Id.* § 1788.17; *Riggs*, 681 F.3d at 1100.

Critically, Rosenthal's definition of "debt collector" is broader than the FDCPA, as California courts have repeatedly explained. *See, e.g., Davidson v. Seterus, Inc.*, 230 Cal. Rptr. 3d 441, 453-454 (2018). In fact, very similar to an apartment complex manager collecting rent and deposits, many California state and federal courts have found that "mortgage servicers and/or mortgage lenders *can and do* fall within the definition of 'debt collector' under the Rosenthal Act." *Id*. at 454 (emphasis in original) (citing to a list of cases finding such servicer/lender as a debt collector under the Rosenthal Act.

Plaintiff pleads that AIR is the apartment complex manager that was in charge of collecting sums due for apartments (rent payments, deposits, etc.), which is sufficient to bring AIR within the Rosenthal Act's definition of a debt collector. Compl. ¶ 8. Plaintiff pleads that AIR attempted to collect on the debt at issue, on its own, by keeping the $1,000 deposit, as Plaintiff's Complaint

explains. Compl. ¶ 16-17. AIR placed the account for collection under its community's name as "Original Creditor," supplying the principal on which Genesis then charged interest. *Id.* ¶¶ 18–19; Placing a debt for collection, and fixing the amount and character of the obligation to be demanded, are acts "in connection with the collection of" that debt. Cal. Civ. Code § 1788.2(b).

AIR is also liable for its debt collector's actions through traditional agency principals. An agent "is one who represents another, called the principal, in dealings with third persons." Cal. Civ. Code § 2295. A principal is responsible for "wrongful acts committed by such agent in and as a part of the transaction of such business." *Id.* § 2338. Whether a collector is a creditor's agent depends on the relationship between them: "In some circumstances, a debt collector may act as a creditor's agent, depending on the nature of their relationship and the level of control the creditor exercises over the debt collector's operations." *Olson v. La Jolla Neurological Assocs.*, 85 Cal. App. 5th 723, 738 (2022).

"[A] creditor can be held vicariously liable for the actions of an agent collecting a debt on its behalf under the Rosenthal Act." *Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070, 1085 (2019); *see also Olson*, 85 Cal. App. 5th at 737 (acknowledging the same rule). *Olson* declined to impose liability only because, on the summary-judgment record before it, the billing service was an independent contractor rather than the creditor's agent. *Id.* at 737–38. That limitation turns on the creditor's control over the collector. *Id.* at 738. Here, the Complaint alleges that Defendants acted through their agents and engaged in "joint debt collection activity." Compl. ¶¶ 10, 24. Whether AIR controlled that collection is a question for discovery. Plaintiff pleads such agency by stating that Defendants acted through their agents, Compl. ¶ 10, and that "Plaintiff suffered harassment and abuse as a result of the Defendants' **joint debt collection activity**" Compl. ¶ 24 (emphasis added). Plaintiff also pleads, in Count II, that AIR perpetrated multiple statutory violations due to this joint debt collection activity. Compl. ¶¶ 39-48.

### C. <u>The Debt AIR Sought to Collect Is a "Consumer Debt."</u>

The Rosenthal Act covers money "due or owing *or alleged to be due or owing*" from a natural person "by reason of a consumer credit transaction." Cal. Civ. Code § 1788.2(f) (emphasis added). A "consumer credit transaction" is one in which "property, services, or money is acquired

on credit" by a natural person "primarily for personal, family, or household purposes." *Id.* § 1788.2(e). California courts read "on credit" to mean obtaining something of value "without immediate payment on the promise to make a payment or payments in the future." *Davidson v. Seterus, Inc.*, 21 Cal. App. 5th 283, 296 (2018); *accord Hagey v. Solar Serv. Experts, LLC*, 94 Cal. App. 5th 1303, 1309 (2023).

AIR argues that nothing was "acquired on credit" because the deposit was paid up front. Mot. at 7–8. But the transaction whereby Plaintiff agreed to rent the apartment from AIR, pursuant to a promise to later make rental payments, comprises housing acquired on credit—to wit, this is exactly why landlord's run credit reports on tenants prior to agreeing to lease to them! At a minimum, whether the obligation AIR asserted arose from a transaction "on credit" turns on the terms of an arrangement beyond the pleadings. Compl. ¶¶ 17, 20. That question cannot be decided on a motion to dismiss.

To that end, federal courts have explained that Plaintiff need not plead to a certainty the nature of the debt. A court in this District has rejected the argument "that a plaintiff's allegations about consumer debt must be unequivocal and ironclad in order to withstand a Rule 12 challenge," explaining that it "ignores well-established pleading standards." *Norton v. LVNV Funding, LLC*, 396 F. Supp. 3d 901, 912 (N.D. Cal. 2019). "A plaintiff must allege a consumer debt but may do so through non-conclusory factual allegations that support plausible inferences." *Id.* Plaintiff has done so. She alleges a deposit paid toward an apartment, Compl. ¶ 14, and Defendants' own collection e-mail treats the resulting balance as one of her "credit obligations."

### D. <u>Plaintiff Adequately Pleads That AIR's Conduct Caused Her Injury.</u>

A debt collector that violates the FDCPA is liable for "any actual damage sustained," for "such additional damages as the court may allow, but not exceeding $1,000," and for costs and reasonable attorney's fees. 15 U.S.C. § 1692k(a)(1)–(3). The FDCPA's statutory damages do not require proof of actual damages. *See, e.g., Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 780–81 (9th Cir. 1982) ("The statute clearly specifies the total damage award as the sum of the separate amounts of actual damages, statutory damages and attorney fees. There is no indication in the statute that award of statutory damages must be based on proof of actual damages.")

AIR's causation argument fails for two reasons. First, actual damages are not an element of the claim. As shown above, statutory damages under the Act do not depend on actual harm. *Id*. Second, the Complaint ties Plaintiff's injuries to Defendants' "joint debt collection activity." Compl. ¶¶ 24–25. Finally, the Complaint makes clear that but for AIR's attempt to recover the alleged debt by sending it for debt collection, none of Plaintiff's harm would have occurred—the Complaint plausibly asserts that AIR's determination that a debt existed caused the litany of wrongdoing that came after such determination. Compl. (*passim*).

**E. <u>The Claim Is Timely.</u>**

A Rosenthal Act claim must be brought "within one year from the date of the occurrence of the violation." Cal. Civ. Code § 1788.30(f). Because the period runs from each violation's occurrence, each collection act starts its own one-year period. *See Norton*, 396 F. Supp. 3d at 915–16 (a plaintiff "may file an action for any violation of the Act which occurs within one year of filing the complaint" (quoting *Malik v. Unifund CCR Partners*, 2009 WL 5197820, at *5 (W.D. Wash. Dec. 22, 2009))). A limitations defense supports dismissal only when "the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

AIR's argument rests on a false premise: that AIR's actionable conduct was its 2024 refusal to return the deposit. Mot. at 9. Plaintiff does not sue over that refusal. She sues over the collection of the debt AIR later claimed. That collection consists of AIR's December 11, 2025 placement of the account for collections, Genesis's February 19, 2026 demand, its April 10, 2026 interest assessment, and the related credit reporting. Compl. ¶¶ 18–22; Each act occurred within one year before Plaintiff filed suit on June 3, 2026. ECF No. 1.

**F. <u>Alternatively, Plaintiff Should Be Granted Leave to Amend.</u>**

To the extent this Court sees fit to grant Defendant's Motion to Dismiss, Plaintiff requests that it do so with leave for Plaintiff to amend her Complaint.

Leave to amend should be "freely give[n] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court considers undue delay, bad faith or dilatory motive, repeated failure to cure

deficiencies by prior amendments, undue prejudice to the opposing party, and futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051–52 (9th Cir. 2003). Prejudice "carries the greatest weight," and "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital*, 316 F.3d at 1052. Leave should be granted "unless [the court] determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*) (*quoting Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). The Court may consider facts raised for the first time in an opposition in deciding whether to grant leave. *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

AIR's futility argument assumes the only facts are that Plaintiff prepaid a deposit and AIR kept it. Mot. at 9–10. If granted leave, Plaintiff would allege, among other additions and revisions, add the following clarifying facts:

(a) On October 25, 2024, Plaintiff paid AIR a $1,000 "holding fee" for a unit at AIR's Malibu Canyon community in Calabasas that she applied to rent for herself and her mother.

(b) On November 13, 2024, AIR's Multi-Site Community Manager refused her written request for a refund, stating that the fee "is non-refundable after 24 hours of holding the apartment." On November 14, 2024, AIR entered a $1,000 "Deposit Termination" charge on her account statement.

(c) After Plaintiff's bank reversed the payment, AIR treated the $1,000 as an unpaid balance. On December 11, 2025, it placed that balance for collection with Genesis as "Original Creditor: MALIBU CANYON." Genesis has since stated under penalty of perjury that it received the account's "placement files" from AIR. ECF No. 24-2 ¶¶ 2, 4.

(d) Genesis charged interest at 7% a year running from the placement date ($13.42 by February 19, 2026, and $23.01 by April 10, 2026), and it reported the account to the credit bureaus.

(e) On information and belief, AIR regularly assesses and collects charges from applicants and tenants in the ordinary course of its business as a national residential landlord, both itself and through collection agencies.

(f) AIR communicated the account information to Genesis, including the $1,000 principal, its community's name as creditor, and Plaintiff's contact information, to induce Genesis to collect the debt on AIR's behalf.

(g) Genesis enclosed AIR's own "Full Ledger" for the account with its April 10, 2026 letter as "verification of debt with MALIBU CANYON." The ledger, printed November 24, 2025, shows that AIR assessed both the $1,000 "Holding Fee" and a separate $1,000 "Deposit Termination" charge, and that AIR posted further adjustments to the account on July 14, 2025.

Plaintiff does not believe such additional pleadings are necessary to survive a Motion to Dismiss, but offers these additional pleadings to ensure the survival of Plaintiff's case.

## VI. CONCLUSION

Given the foregoing argument and authority, this Court should deny Defendant AIR's Motion to Dismissor, alternatively, grant Plaintiff leave to amend her Complaint as proffered above.

Dated: October 06, 2026

Respectfully submitted,

GATOR LAW, P.C.

By: /s/ Johnathan T. Greenway
Johnathan T. Greenway
Attorney for Plaintiff
FLORENCE ASSALIT

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing was served on all parties and counsel of record via the Court's CM/ECF system, in accordance with the Federal Rules of Civil Procedure, on October 06, 2026.

/s/ Johnathan T. Greenway

Johnathan T. Greenway